Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| COLEGIO MI CUIDO Y EDUCACIÓN, INC. Y OTROS<br><br>Parte Recurrida<br><br>v.<br><br>RAÚL ANTONIO ORTÍZ DÁVILA Y OTROS<br><br>Parte Peticionaria | TA2026CE00737 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Humacao<br><br>Caso núm.: HU2022CV00094<br><br>Sobre: Acción Civil |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pérez Ocasio y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de junio de 2026.

Comparece la parte peticionaria, Raúl Antonio Ortiz Dávila (Ortiz Dávila), su esposa Elizabeth Gómez Acevedo (Gómez Acevedo) y la sociedad legal de gananciales compuesta por ambos (en conjunto los Ortiz-Gómez o peticionarios), y solicitan que revoquemos la *Resolución*[1] emitida el 27 de mayo de 2026, notificada el 28 de mayo de 2026, por el Tribunal de Primera Instancia, Sala de Humacao (TPI). Mediante el aludido dictamen, el TPI no autorizó la inclusión de los testigos y el perito anunciados por los peticionarios.

Junto con el recurso, los peticionarios presentaron *Moción en Auxilio de Jurisdicción,* en la que solicitaron la paralización de los procedimientos ante el foro de instancia[2]. El 11 de junio de 2026, decretamos la paralización de los procedimientos ante el foro primario[3].

---

[1] Entrada Núm. 489 de SUMAC TPI.
[2] El juicio en su fondo está pautado del 24 al 27 de agosto de 2026.
[3] Entrada Núm. 3 SUMAC TA.

Luego de un detenido examen del expediente ante nuestra consideración, así como los alegatos de las partes, a tenor con los criterios dispuestos en la Regla 52.1 de Procedimiento Civil[4] y la Regla 40 del Reglamento del Tribunal de Apelaciones[5], expedimos el auto de *certiorari* y revocamos la *Resolución* recurrida. En consecuencia, se levanta la paralización de los procedimientos y devolvemos el caso al TPI para la continuación de los procedimientos conforme a lo aquí resuelto.

## I.    Trasfondo procesal y fáctico

Las partes han comparecido en varias ocasiones[6] ante esta Curia y el expediente judicial electrónico es extenso[7]. Por ende, delimitaremos el tracto procesal pertinente a la controversia ante nuestra consideración.

El 31 de enero de 2022, el Colegio instó una acción civil reivindicatoria[8] en contra de los Ortiz-Gómez, Desiderata Realty LLC (Desiderata) y otros[9]. A grandes rasgos, expresó que adquirió la Finca Número 2,059, inscrita al Folio 126 del Tomo 54 del Registro de la Propiedad de Las Piedras, Puerto Rico. El Colegio especificó que adquirió la referida finca de Desiderata, su anterior dueño, en virtud de la Escritura Núm. 9 del 15 de junio de 2020, otorgada ante el Notario Público Víctor Martínez Cruz. El Colegio señaló que la referida finca constituye el remanente de la finca principal, luego de que fuera segregada en varios lotes, uno de los cuales constituye la propiedad de los Ortiz-Gómez, la cual colinda lateralmente con la

---

[4] 32 LPRA Ap. V, R. 52.1.

[5] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025).

[6] Véase, KLCE202200482 (Resuelto el 22 de junio de 2022); KLAN202200916 (Resuelto el 31 de enero de 2023); KLCE202400241 (Resuelto el 23 de abril de 2024); KLCE202500520 (Resuelto el 24 de junio de 2025); TA2025CE00369 (Resuelto el 21 de noviembre de 2025) y TA2025AP00304 (Resuelto el 21 de noviembre de 2025).

[7] A esta fecha, el expediente judicial consta de 495 entradas.

[8] Entrada Núm. 1 SUMAC TPI.

[9] En específico, el Colegio instó su demanda en contra de los peticionarios, Desiderata Realty LLC, e incluyó a la Cooperativa de Ahorro y Crédito Las Piedras como parte con interés.

única entrada de acceso a la finca adquirida por el Colegio. La recurrida explicó que una franja de la propiedad es el único acceso legal de la finca hacia la vía pública y que los esposos Ortiz-Gómez habían actuado como edificantes de mala fe y con ánimos de usurpar la propiedad del Colegio, específicamente la franja de acceso hacia la vía pública. A tales fines, el Colegio alegó que los Ortiz-Gómez presentaron un interdicto posesorio (HU2020CV00690) en el que el TPI emitió sentencia a su favor.

En cuanto a la reclamación contra el vendedor del terreno, Desiderata Realty, LLC, el Colegio esgrimió que, en la cláusula 4 de la escritura de compraventa, Desiderata manifestó que poseía título suficientemente válido en derecho para vender la propiedad en controversia "sin más cargas, gravámenes y/o limitaciones que las establecidas en la referida escritura."[10] Por tanto, el Colegio solicitó la protección del tercero registral, la reivindicación de la propiedad en controversia y acceso a la vía pública la cual alegan forma parte de su propiedad.

El 14 de junio de 2023, los Ortiz-Gómez presentaron *Contestación a Demanda Enmendada y Reconvención[11]*. En síntesis, los peticionarios argumentaron que, la realidad registral de la finca de los peticionarios y la finca del Colegio es distinta a la realidad extraregistral. En ese sentido especificaron que, desde el año 1962, el dueño registral anterior—padre del copeticionario Ortiz Dávila—, adquirió el título sobre la propiedad a base de las colindancias que le representaron bajo las dimensiones y patio verjado tal cual estaba cercado al momento del Colegio adquirir la propiedad colindante. Destacaron que el terreno adquirido por el Colegio estuvo vacante por décadas. También señalaron que el Colegio adquirió la propiedad a precio alzado, según las verjas y/o colindancias

---

[10] Véase, Entrada Núm. 1 SUMAC TPI.
[11] Entrada Núm. 97 SUMAC TPI.

físicamente establecidas. A la luz de lo anterior, los peticionarios plantearon que, desde el año 1962, los progenitores de Ortiz Dávila habían tomado la posesión sobre toda el área incluyendo el trecho en controversia, por lo que se cumplían con los requisitos de usucapión.

Acaecidos varios incidentes procesales, se suscitó una serie de controversias entre las partes en torno al descubrimiento de prueba y deposiciones pautadas. El TPI celebró una vista sobre el estado de los procedimientos el 13 de enero de 2025[12]. Así las cosas, y luego de la suspensión de una deposición, el 21 de marzo de 2025, el TPI emitió una orden[13] en la que permitió la deposición del Ing. Guillermo Burgos (perito del Colegio) y apercibió a las partes que no se permitirían más suspensiones. El foro *a quo* enfatizó que no aceptarían más dilaciones ni suspensiones, bajo apercibimiento de severas sanciones.

Así las cosas, el 30 de marzo de 2025, los Ortiz-Gómez presentaron *Moción Informativa sobre Perito Consultor para la Deposición*[14] en la que argumentaron que, de la deposición al Ingeniero Burgos surgiría prueba técnica, por lo que era necesario contratar los servicios del Ing. Félix Santiago Mezquida como perito consultor para asistirles y brindarles apoyo técnico durante la deposición del Ingeniero Burgos. Desiderata se opuso a lo solicitado[15]. El 31 de marzo de 2025, el TPI emitió una orden en la que permitió la comparecencia del perito consultor de los Ortiz-Gómez, bajo el apercibimiento de que no se debían dilatar los procedimientos ni interferir con la deposición[16].

---

[12] Entrada Núm. 334 SUMAC TPI.
[13] Entrada Núm. 343 SUMAC TPI.
[14] Entrada Núm. 346 SUMAC TPI.
[15] Entrada Núm. 347 SUMAC TPI.
[16] Entrada Núm. 352 SUMAC TPI.

Culminada la deposición al Ing. Burgos, los peticionarios presentaron una *Moción Informativa*[17], en la que expresaron que ese día tuvieron conocimiento de la prueba que faltaba de la parte demandante y que, de la deposición tomada al Ingeniero Burgos surgieron nuevos asuntos y admisiones relevantes, por lo que estarían anunciando prueba para refutar la del Colegio. Destacaron que dicha prueba no se anunció antes por ser prematura. El TPI se dio por enterado[18]. No obstante, el Colegio se opuso a lo solicitado y arguyó que con la deposición del Ingeniero Burgos se daba por concluido el descubrimiento de prueba[19]. Por ello, le solicitaron al TPI que se diera por concluido el descubrimiento de prueba y le impusiera sanciones a los Ortiz-Gómez. A tenor, el TPI emitió la siguiente orden[20]:

"[…]

Se le aclara a las partes que este Tribunal permitió el consultor para asistir en la deposición a la parte codemandada, **no para reabrir descubrimiento adicional".**

Las partes presentaron escritos en oposición y réplica. En lo aquí pertinente, los peticionarios presentaron una dúplica[21] a la réplica del Colegio, en la que, además de presentar sus argumentos, expusieron que, aun cuando el Colegio ni Desiderata les solicitaron o cursaron interrogatorio alguno como parte de sus respectivos descubrimientos de prueba, los peticionarios anunciaban a sus testigos en el presente escrito de dúplica[22]. El TPI emitió orden en la que declaró "No Ha Lugar a lo planteado en esta moción…"[23]. El foro recurrido enfatizó que las partes debían cumplir con lo ordenado y

---

[17] Entrada Núm. 354. SUMAC TPI.
[18] Entrada Núm. 355 SUMAC TPI.
[19] Entrada Núm. 356 SUMAC TPI.
[20] Entrada Núm. 357 SUMAC TPI. Énfasis nuestro.
[21] Entrada Núm. 360 SUMAC TPI.
[22] Los testigos anunciados fueron los siguientes: el co-peticionario, el Sr. Raúl Antonio Ortiz Dávila; su hermano, el Sr. José A. Ortiz Dávila, el Dr. Julio Santori Ortiz, el perito consultor, Ing. Félix Santiago Mezquida y como testigo hostil a la señora Fontánez.
[23] Entrada Núm. 361 SUMAC TPI.

que no se permitirían más dilaciones en relación con el descubrimiento de prueba.

En desacuerdo, los peticionarios solicitaron reconsideración. Las demás partes presentaron sus escritos en oposición y el 28 de abril de 2026, el TPI la declaró No Ha Lugar[24]. Aun inconformes, los peticionarios presentaron *Moción Bajo la Regla 49.2 de Procedimiento Civil a Fin de Evitar Perjuicio e Injusticia*[25]. Las partes opositoras presentaron sus posturas[26]. El 12 de mayo de 2025, el TPI declaró No Ha Lugar la solicitud de relevo y ordenó el desglose de las declaraciones juradas presentadas por los peticionarios[27]. Inconformes, ese mismo día, los peticionarios incoaron un recurso de *certiorari* (KLCE202500520). Un panel de este foro denegó la expedición del auto[28].

Luego de numerosos trámites procesales y recursos apelativos[29], innecesarios pormenorizar, el 11 de mayo de 2026, se celebró la conferencia con antelación a juicio. En esta, el TPI escuchó los argumentos de las partes respecto al asunto de los testigos. En lo que nos atañe, el abogado de los peticionarios, el Lcdo. Juan M. Adorno Peña (licenciado Adorno Peña), expresó que los testigos anunciados serían utilizados para probar sus defensas y alegaciones. Conforme surge de la *Minuta*[30], el TPI, luego de escuchar a las partes dio por concluido la presentación del informe, pero se reservó la determinación sobre la controversia de los testigos anunciados por los peticionarios. A tales fines, les concedió un término a las partes para presentar escritos en apoyo de sus

---

[24] Entrada Núm. 368 SUMAC TPI.
[25] Entrada Núm. 369 SUMAC TPI. Junto a esta acompañaron declaraciones juradas suscritas por Raúl Antonio Ortiz Dávila, el Dr. Julio Santory Ortiz, el Sr. José Antonio Ortiz Dávila, el Sr. Félix Fernández López y el Sr. Edwin Figueroa Soto.
[26] Entrada Núm. 373 y 384 de SUMAC TPI.
[27] Entrada Núm. 395 SUMAC TPI.
[28] Véase, *Resolución* del 24 de junio de 2025 en el KLCE202500520. Entrada Núm. 443 en SUMAC TPI.
[29] TA2025CE00369 y TA2025AP00304.
[30] Entrada Núm. 485 SUMAC TPI.

respectivas posturas y el juicio quedó señalado para los días del 24 al 27 de agosto de 2026.

En cumplimiento con lo ordenado en corte abierta, el 12 de mayo de 2026, los Ortiz-Gómez presentaron *Moción en Cumplimiento de Orden y Memorando de Derecho Justificando las Razones en Hecho y Derecho por lo Cual Procede Permitir Testimonio de los Testigos Anunciados por los Esposos Ortiz – Gómez*[31]. Por su parte, Desiderata y el Colegio presentaron sus escritos en oposición[32].

Finalmente, el 27 de mayo de 2026, el TPI emitió la *Resolución* recurrida, en la que determinó que no procedía autorizar la inclusión de los testigos y peritos anunciados por los peticionarios. El TPI determinó que las controversias del pleito, así como la naturaleza técnica y necesidad de prueba pericial eran conocidas por las partes desde el inicio y, por ende, previsibles desde etapas tempranas de los procedimientos. Por tal razón, el TPI concluyó que habiendo concluido el descubrimiento de prueba y estando próximo el juicio, el permitir la inclusión de nueva prueba testimonial y pericial que pudo haberse anunciado con antelación, tendría el efecto de reabrir nuevamente le descubrimiento de prueba y alterar el calendario judicial. El TPI añadió que el asunto de los testigos fue objeto de revisión por este foro intermedio, mediante el *certiorari* KLCE202500520, el cual fue denegado. En fin, el TPI destacó que aun cuando el debido proceso de ley garantiza a todo litigante el derecho a presentar prueba y defender sus planteamientos, este no es absoluto y "debe armonizarse con la facultad inherente del Tribunal de imponer orden en los procedimientos, exigir cumplimiento con sus órdenes y evitar actuaciones que provoquen

---

[31] Entrada Núm. 478 SUMAC TPI.
[32] Entradas Núm. 481 y 486 respectivamente.

retrasos injustificados o afecten la sana administración de la justicia"[33].

Insatisfechos, los Ortíz Gómez acuden ante nos vía *certiorari* y formularon los siguientes señalamientos de error:

ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA EN SU EXAMEN DEL RÉCORD JUDICIAL, TODA VEZ QUE NI DICHO FORO NI EL HONORABLE TRIBUNAL DE APELACIONES HAN RESUELTO EN DETERMINACIÓN ALGUNA QUE EXCLUYÓ DE DICHOS TESTIGOS.

ASIMISMO, ERR[Ó] EL TPI AL IGNORAR LA REALIDAD FÁCTICA DE QUE NI EL COLEGIO NI DESIDERATA MOSTRARON INTERÉS ALGUNO EN CONOCER LA IDENTIDAD DE LOS TESTIGOS A SER PRESENTADOS POR LOS RECURRENTES (SIC) EN EL JUICIO. EN CONSECUENCIA, SU DIVULGACIÓN– MEDIANTE MOCIÓN PRESENTADA INMEDIATAMENTE LUEGO DE COMPLETADAS LAS DEPOSICIONES Y POSTERIORMENTE EN EL INFORME–NO AFECTÓ EN MODO ALGUNO EL CALENDARIO DE EVENTOS ESTABLECIDO COMO PARTE DEL MANEJO DEL CASO.

NO EXISTE ACTUACIÓN ALGUNA IMPUTABLE A LOS RECURRENTES (SIC) QUE CONSTITUYA VIOLACIÓN PROCESAL, QUE PERMITI[E]RA LA EXCLUSIÓN DE LOS TESTIGOS ANUNCIADOS MÁXIME CUANDO NUNCA FUERON OBJETO DE DESCUBRIMIENTO DE PRUEBA SOBRE TALES EXTREM[O]S Y MUC[H]O MENOS DE SANCIÓN POR PARTE DEL TRIBUNAL POR ALGUNA VIOLACI[Ó]N.

LA DETERMINACIÓN RECURRIDA VULNERA REQUISITOS ESENCIALES DEL DEBIDO PROCESO DE LEY, ENTRE ELLOS: (1)...; (2) QUE EL PROCESO SE CELEBRE ANTE UN JUEZ IMPARCIAL; (3) LA OPORTUNIDAD DE SER OÍDO Y DEFENDERSE; (4)...; (5)....; Y, DE MANERA PARTICULARMENTE GRAVE, (6) QUE LA DECISIÓN SE FUNDAMENTE EN EL RÉCORD DEL CASO.

Y SE CONFIGURA, POR TANTO, UNA VIOLACIÓN CRASA DEL TPI EN EL EJERCICIO DE SU FUNCIÓN ADJUDICATIVA AL EXCLUIR TESTIGOS DE LA PARTE, IMPONIENDO ASÍ "LA MEDIDA SEVERA DE EXCLUIR DEL JUICIO EL TESTIMONIO DE UN TESTIGO CRUCIAL [O DE UN PERITO ESENCIAL], ANÁLOGA A LA SANCIÓN EXTREMA DE LA DESESTIMACIÓN"

El 18 de junio de 2026, Desiderata presentó *Solicitud de Desestimación y/o Alegato en Oposición a Expedición de Recurso de*

---

[33] Véase, Entrada 489 SUMAC TPI, pág. 6.

*Certiorari* y *Oposición a "Moción en Auxilio de Jurisdicción"*. Plantean que esta Curia no tiene jurisdicción para atender el presente recurso, ante el dictamen emitido por otro panel de este foro intermedio en el KLCE202500520. En igual fecha, el Colegio presentó, *Mostrando Causa a Tenor con las Reglas 38 y 39 del Reglamento,* con similares planteamientos.[34]

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II.    Derecho aplicable

### A. El *Certiorari*

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[35]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V[36]. Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones

---

[34] Por su parte, el 25 de junio de 2026, los peticionarios presentaron *Moci[ó]n Solicitando Permita R[é]plica a: "Oposición a Moción de Auxilio de Jurisdicción"; "Solicitud de Desestimación" "Mostraci[ó]n de Causa a Tenor con las Reglas 38 y 39 del Reglamento".*
[35] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[36] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1*, supra,* para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[37], se justifica nuestra intervención. Estos criterios son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra,* enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la

---

[37] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 2015 DPR ___ (2025).

discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción[38].

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[39] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

### B. Discreción Judicial

El Tribunal Supremo ha establecido que los foros revisores no interfieren con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[40] Además, se requiere que la intervención en esta etapa evite un perjuicio sustancial.[41]

La discreción judicial se define como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión Justiciera".[42] El ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad.[43] Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.[44]

---

[38] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).
[39] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).
[40] *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 210 (2023); *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular*, supra, pág. 155.
[41] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[42] *Rivera et al. v. Arcos Dorados et al.,* supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657–658 (1997).
[43] *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 272 (2021); *Rivera y otros v. Bco. Popular*, supra.
[44] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013); *Bco. Popular de P.R. v. Mun. de Aguadilla*, supra, pág. 658.

El Tribunal Supremo ha expresado que un tribunal abusa de su discreción

> [...] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[45]

## B. El descubrimiento de prueba

Es norma reiterada que el descubrimiento de prueba debe ser amplio y liberal. Únicamente existen dos limitaciones al descubrimiento: (1) que lo que se pretende descubrir no sea materia privilegiada, y (2) que sea pertinente al asunto en controversia. No obstante, el Tribunal de Primera Instancia tiene entera discreción para establecer las reglas que entienda necesarias para llevar a cabo el descubrimiento de prueba. En ese ejercicio, puede limitar el alcance y los mecanismos de descubrimiento de prueba que habrán de utilizarse, siempre que con ello se adelante la solución de controversias de forma rápida, justa y económica. Esta política tiene el efecto de facilitar la tramitación de los pleitos y evitar los inconvenientes, sorpresas e injusticias que surgen, cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio. Además, permite a las partes precisar con exactitud los hechos en controversia, ya que en nuestro ordenamiento procesal el propósito de la demanda es notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes.

Cónsono con lo anterior, y como parte de la discreción concedida a los foros primarios en torno al descubrimiento de

---

[45] *SLG ZapataRivera v. J.F. Montalvo,* supra, citando a *Pueblo v. Rivera Santiago,* 176 DPR 559, 580 (2009)).

prueba, éstos están facultados para dictar cualquier orden que entienda justa o necesaria respecto a alguna parte que se negase a descubrir lo solicitado u ordenado.

Por su parte, La Regla 34.3(b)(3) de Procedimiento Civil dispone, en lo pertinente, lo siguiente:

> Si una parte . . . deja de cumplir una orden para llevar a cabo o permitir el descubrimiento de prueba . . . el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que sean justas; entre ellas las siguientes:
> [...]
> (3) Una orden para eliminar alegaciones o parte de ellas, o para suspender todos los procedimientos posteriores hasta que la orden sea acatada, para desestimar el pleito o procedimiento, o cualquier parte de ellos, o para dictar una sentencia en rebeldía contra la parte que incumpla.
> [...]
> (Énfasis nuestro).

De tal forma, los foros judiciales tienen la facultad de imponer sanciones, cuando una parte incumpla con los parámetros de un descubrimiento de prueba.

Por otra parte, la Regla 37.3 de Procedimiento Civil provee para que el tribunal emita una orden sobre la calendarización del caso que recoja las disposiciones y acuerdos considerados en la conferencia inicial. De esta forma, la regla permite la intervención temprana del tribunal para establecer de manera clara la calendarización del caso. Al mismo tiempo, la regla dispone que los términos y los señalamientos fijados en la orden de calendarización serán de estricto cumplimiento, sujeto a la sanción establecida en la Regla 37.7 del referido cuerpo de reglas[46].

## C.  Sanciones

La Regla 37.7 de las de Procedimiento Civil contempla que se le impongan sanciones a la parte que incumple con una orden del tribunal sin justa causa[47]. Asimismo, la Regla 44.2 de las de

---

[46] 32 LPRA Ap. V, R. 37.3. Véase, además *Rivera et al. v. Arcos Dorados et al.*, supra.
[47] 32 LPRA Ap. V, R. 37.7.

Procedimiento Civil permite la imposición de sanciones económicas por conducta constitutiva de demora, inacción, abandono o falta de diligencia, en perjuicio de la eficiente administración de la justicia[48].

En cuanto a la sanción de excluir un testigo importante, esta solo debe utilizarse en circunstancias excepcionales, cuando la conducta de la parte ha sido contumaz o de mala fe[49]. Al respecto, la norma es que:

> Debe tenerse en cuenta, además, que la medida severa de excluir del juicio el testimonio de un testigo crucial, que es análoga a la medida extrema de la desestimación, sólo debe usarse en circunstancias excepcionales, en casos en los cuales la conducta de la parte sancionada ha sido contumaz o de mala fe[.] *Íd.,* pág. 895.

La medida severa de excluir del juicio el testimonio de un testigo crucial o de un perito esencial, que es análoga a la medida extrema de la desestimación, solo debe usarse en circunstancias excepcionales. Tales sanciones drásticas no son favorecidas judicialmente[50].

La política pública y judicial imperante favorece la dilucidación de los casos en sus méritos[51]. Esta política "no se cumple cuando a una parte se le priva de traer al juicio un testigo esencial, sin que haya razones de peso para tal privación imputables a dicha parte."[52]

El derecho a presentar prueba que sustente una reclamación es parte importante del debido proceso de ley al cual tiene derecho quien es parte de todo proceso adversativo[53].

**III. Aplicación del Derecho a los Hechos**

---

[48] 32 LPRA Ap. V, R. 44.2.
[49] *Valentín v. Mun. de Añasco,* 145 DPR 887, 895 (1998).
[50] *Rivera et al. v. Arcos Dorados et al.* supra, pág. 206-207.
[51] *Valentín v. Mun. de Añasco,* supra*,* pág. 897.
[52] *Íd.*
[53] *Natal Albelo v. Romero Lugo,* 206 DPR 465, 509 (2021); *Román Ortiz v. OGPe,* 203 DPR 947, 954 (2020); *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881, 889 (1993).

De entrada, nos corresponde atender los planteamientos presentados por los recurridos, respecto a si, en virtud de lo resuelto por otro panel de este foro intermedio en el KLCE202500520, tenemos jurisdicción para atender el recurso antes nos. Examinado el expediente ante nuestra consideración, así como la resolución emitida en el KCLE202500520, resolvemos que tenemos jurisdicción para atender el recurso que nos ocupa. Lo anterior, pues el panel de que atendió el recurso KLCE202500520 determinó que "no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos"[54]. Así, el panel que atendió dicho recurso se abstuvo de intervenir en los méritos del caso y, en su discreción, denegó la expedición del auto. Sabido es que "la denegatoria a expedir no implica la ausencia de error en el dictamen, cuya revisión se solicitó, ni constituye una adjudicación en los méritos"[55]. En virtud de lo anterior, declaramos No Ha lugar las solicitudes de desestimación presentadas por los recurridos. Resuelto lo anterior, resolvemos el caso ante nos.

A grandes rasgos los Ortiz-Gómez señalan que el TPI incidió al excluir los testigos anunciados por estos, pues aducen que la determinación del TPI constituyó un abuso de discreción análoga a la severa sanción de la desestimación. Les asiste la razón y nos explicamos.

Luego de un detenido estudio del extenso expediente judicial, de este no se desprende orden del foro recurrido que estableciera la fecha en que culminaría el descubrimiento de prueba. Nótese que, en el presente caso, instado el 31 de enero de 2022, no se había celebrado la conferencia con antelación a juicio hasta el pasado 11 de mayo de 2026. Tampoco surge una orden previa al anuncio de los testigos que exprese que, en efecto, el descubrimiento de prueba

---

[54] Véase, *Resolución* del KLCE202500520, Entrada Núm. 443 en SUMAC TPI.
[55] *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008).

se había dado por concluido. Aun cuando del extenso tracto procesal surgen varias órdenes a las partes con apercibimiento de sanciones económicas, no surge que, previo a excluir los testigos, el TPI hubiera impuesto sanciones menos drásticas a los peticionarios. Por otra parte, el TPI sí permitió el anuncio tardío del perito de la parte demandante, cuya deposición fue suspendida por causa atribuible a dicha parte, lo cual ocasionó una dilación de dos meses al calendario judicial, sin que a estos se le impusieran sanciones al respecto. Por tanto, concluimos que el foro primario se excedió al imponer a los peticionarios, *como primera sanción*, una medida tan severa como la exclusión de los testigos y perito propuestos.

Lo anterior, cobra mayor relevancia cuando los peticionarios, además de ser demandados en el pleito, presentaron una reconvención, cuyas alegaciones, en su día, ameritan la presentación de prueba en apoyo de sus alegaciones.

Ciertamente, por las cuestiones envueltas, el presente litigio ha sido muy contencioso y los múltiples incidentes entre las partes han contribuido a su dilación. Si bien, es obligación de los tribunales garantizar una solución justa, rápida y económica, también lo es que los casos se ventilen en sus méritos. Por tanto, si bien las Reglas de Procedimiento Civil le proveen a los foros de instancia la facultad de imponer sanciones más severas, ello procede *luego de que la parte sea debidamente apercibida de la situación y consecuencias que acarrearía un incumplimiento subsiguiente*[56]. A la luz de lo anterior, y ante las circunstancias particulares del presente caso, el TPI erró al no permitir los testigos anunciados por los peticionarios, como primera sanción. Resolver lo contrario, dejaría a los peticionarios sin ninguna prueba para sustentar sus alegaciones y reconvención y

---

[56] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR 194 (2023) (Bastardillas nuestras).

dicha parte quedaría en desventaja. Por tanto, procede expedir el auto y revocar la resolución recurrida.

### III.     Parte dispositiva

Por los fundamentos que anteceden, los cuales se hacen formar parte de esta Sentencia, expedimos el auto de *certiorari* y revocamos la *Resolución* recurrida. En consecuencia, se levanta la paralización de los procedimientos y devolvemos el caso para la continuación de los procedimientos de conformidad con lo aquí resuelto.

**Notifíquese inmediatamente.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones